# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BRIAN T. STEPP,<br>    Petitioner, | Case No. 1:16-cv-283 |
| vs. | Barrett, J.<br>Bowman, M.J. |
| WARDEN, WARREN<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Warren Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on respondent's return of writ and petitioner's reply. (Doc. 8, 9).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's conviction and sentence:[1]

> {¶ 2} In late 2003, C.T. was working as a prostitute in the city of Hamilton, in Butler County, Ohio. One night in November of that year, she was standing near the intersection of Lincoln Street and Dixie Highway when a man in a red car pulled up to her and offered her a ride. C.T. got into the man's car, believing he was going to be a "customer."
>
> {¶ 3} Immediately after she did, the man started driving very fast down Lincoln Street and towards Route 4, onto which he turned north. C.T. began to get nervous after the man refused to tell her what "services" he wanted her to perform for him. When she again asked him what he wanted, the man pulled out a badge and told her she was under arrest for prostitution. He ordered her to put on her seatbelt, to lock her door, and not to think about running, because he had a gun, and he was "allowed to shoot her" and even "kill" her, and "nobody will think twice about it."

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

{¶ 4} The man drove C.T. to the parking lot of a "police station" in Liberty Township and told her she could do him a "favor" or he could have her arrested. When C.T. refused to do him a favor, the man drove out of the police station's parking lot and then to a corn field, where he ordered her to get out the car and to get undressed. He then forced her to perform oral sex on him.

{¶ 5} Afterwards, the man told C.T. stories about different scenarios he allegedly had encountered as a police officer. He then ordered her to get dressed, handcuffed her, and placed her back in his car. When he tried to frisk C.T., she tried to escape. He eventually overpowered her by kicking her and punching her in the head. He then drove out of the corn field and over to a small house.

{¶ 6} At the house, the man led C.T. to a bathroom and ordered her to take a shower. When he left the room, C.T. tried to escape by climbing out the bathroom window; however, when the man saw what she was doing, he grabbed her hair, pulled her back inside the bathroom, slapped her, and threatened her. He then stayed until she got into the shower. After C.T. finished showering, the man made her come into the living room, where he forced her to have intercourse with him. After telling her more fictitious stories about his experiences as a police officer, he ordered C.T. to get dressed and then drove her to a convenience store near Cincinnati Dayton Road, where he dropped her off.

{¶ 7} H.K. was another prostitute who worked in Hamilton at this time. On an early evening in late December 2003 or early January 2004, H.K. was standing in the area of North 7th Street when a man in a red car pulled up to her and offered her a ride. After H.K. got into the car, the man told her someone named "Jewel" told him she (H.K.) was a "snitch," and "a drug dealer had hired him to beat [her] up." At that point, H.K. believed that the man was threatening her life.

{¶ 8} As the man drove H.K. into the city of Fairfield and onto Bobmeyer Road, he told her he was a police officer and showed her a badge. He also showed her a knife he had with him and told her he was going to hurt her because he had been hired to do so. The man drove to the end of a lane off Bobmeyer Road, back by a small house or church, and parked there. He then forced H.K. to perform oral sex on him.

{¶ 9} Afterwards, H.K. got out of the car, and the man followed her. He searched her pockets and found a needle H.K. carried with her to use heroin. The man held the needle to H.K.'s neck, threatening to kill her. H.K. begged for her life. He then took her coat from her to discourage her from running away. When they got back in the car, H.K. saw the man laughing and smiling, and seemingly "enjoying himself." He then dropped H.K. off at East Avenue.

{¶ 10} J.G. was another prostitute who worked in Hamilton at the time of these events. One afternoon in November 2003, she was standing in the area of Sycamore and Ludlow Streets when she saw a red car that "kept circling." When the car finally pulled over, J.G. got in.

{¶ 11} Shortly thereafter, the man who was driving the car told J.G. he was a police officer. When she asked him to stop the car and let her out, the man refused to let her leave. He drove her to Tylersville Road, turned onto a dirt road, and then drove to a corn field where he parked. The man went to the passenger side of the vehicle, pressed his forearm against J.G.'s neck, pulled her pants down, and raped her.

{¶ 12} Afterwards, the man returned to the driver's side of the vehicle, and J.G. got out of the vehicle and started walking down the dirt road. The man pulled up to J.G. and ordered her to get back in the car or he would run her over. J.G. finally got back into the car because she believed the man "was capable of anything." The man drove J.G. to Grand Boulevard and told her to get out.

{¶ 13} C.T., H.K., and J.G. did not immediately report these crimes to the police. However, on February 12, 2004, H.K. finally told the police what had happened to her on the night she was raped when she was being questioned by them on an unrelated matter. She gave the police the license plate number of the red car that was driven by the man who sexually assaulted her. The police tracked the license plate number to Brian Stepp. Detective Ken Hardin showed H.K. a photo array of suspects that contained Stepp's photograph and asked her to identify the man who raped her. It took H.K. only "a few seconds" to pick out Stepp's photograph.

{¶ 14} Within the next five days, the police also interviewed C.T. and J.G., who told the police what Stepp had done to them in November 2003. When Detective Hardin showed C.T. and J.G. a photo array that contained Stepp's photograph, both of them picked out Stepp's photograph and identified him as the man who had raped them.

*State v. Stepp*, No. CA2007-05-117, 2008 WL 3893601, at *1–2 (Ohio Ct. App. Aug. 25, 2008).

## II. PROCEDURAL BACKGROUND

### State Trial Proceeding

In April 2004, the Butler County, Ohio grand jury returned a seven-count indictment, charging petitioner with three counts of kidnapping, three counts of rape, and one count of sexual battery. *See id.* at *3. Petitioner was apprehended in England on September 29, 2004, before

3

being extradited to the United States on July 9, 2006. *Id.*

On February 7, 2007, following a jury trial, petitioner was found guilty as charged in the indictment. *Id.* Petitioner was subsequently sentenced to a total aggregate prison term of 55 years. Specifically, petitioner received consecutive terms of ten years each on the three rape charges, five years on the sexual battery charge, and ten, seven, and three years on the remaining kidnapping charges. *Id.*

Petitioner, through different counsel, filed a direct appeal to the Ohio Court of Appeals. Petitioner raised the following eight assignments of error:

1. The pretrial photographic identification procedure was so unnecessarily suggestive and conducive to misidentification that Mr. Stepp was denied the due process of law.

2. The state violated Mr. Stepp's due process rights when it destroyed favorable evidence that was material to the issue of guilt.

3. Trial counsel provided constitutionally ineffective assistance of counsel when he failed to raise evidence that clearly fell within the rape shield law in pretrial motion. The trial court violated Stepp's right to confrontation when it excluded relevant impeachment evidence.

4. The trial court violated Brian Stepp's rights to due process and a fair trial when it entered a judgment of conviction for rape, kidnapping, and sexual battery against the manifest weight of the evidence.

5. Mr. Stepp's due process rights were violated when the trial court instructed the jury on flight in violation of Mr. Stepp's rights.

6. Mr. Stepp's due process rights were violated when the trial court refused to allow him to read, rebut and/or explain evidence from victim impact statements and then relied on them when determining his sentence.

7. Trial counsel provided constitutionally ineffective assistance of counsel for failing to object to the trial court's imposition of maximum and consecutive sentences.

8. The trial court erred in sentencing Mr. Stepp to serve consecutive prison

terms.

*See id.* On August 25, 2008, the Ohio Court of Appeals affirmed his conviction and sentence. *Id.*

On February 4, 2009, the Ohio Supreme Court declined jurisdiction over petitioner's subsequent appeal. *State v. Stepp*, 900 N.E.2d 623 (Table) (Ohio 2009).

### First Federal Habeas Corpus Petition

On May 3, 2010, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Step v. Warden*, No. 1:10-cv-282, 2011 WL 5520985 (S.D. Ohio Nov. 14, 2011). Petitioner raised the following single ground for relief:

> Trial counsel provided constitutionally ineffective assistance of counsel when he failed to timely notify the trial court of his intent to offer evidence covered by Ohio's Rape Shield statute. Counsel's failure to perform in an objectively reasonable manner caused actual prejudice. Had Mr. Stepp been permitted to confront his accuser, Ms. Carrey Tidmore, she would have been discredited as a witness, and Mr. Stepp would not have been convicted of the crimes that she alleged.

*Id.* at *3. On November 14, 2011, this Court denied the petition. *Id.* at *7.

Petitioner did not appeal to the Sixth Circuit Court of Appeals.

### Motion to Resentence

Meanwhile, on May 28, 2010, petitioner filed a pro se motion to resentence, pursuant to Ohio Rev. Code § 2929.191(A)(1). (Doc. 7, Ex. 1). Petitioner argued that he was not properly notified of the length of post-release control and the consequences of violating it. (*Id.* at PageID 41–42). On August 6, 2010, the state trial court entered a *nunc pro tunc* judgment of conviction entry in response to petitioner's motion. (Doc. 7, Ex. 2).

## Motion to Vacate Sentence

On May 14, 2013, petitioner filed a motion to vacate his sentence. (Doc. 7, Ex. 3). Petitioner argued that his consecutive sentences were improper.

On November 5, 2013, the Ohio trial court denied petitioner's motion. (Doc. 7, Ex. 5). The court determined that the motion was a petition for post-conviction relief, which was untimely and because the claims were raised or could have been raised on direct appeal, were barred by the doctrine of *res judicata*. (*Id.*).

Petitioner filed a notice of appeal to the Ohio Court of Appeals on December 5, 2013. (Doc. 7, Ex. 6). He raised the following single assignment of error in his merit brief:

> The trial court erred when it refused to vacate his void sentence, and conduct a *de novo* re-sentencing hearing, pursuant to the Revised Code 2929.14(E)(4), Sixth Amendment to the U.S. Constitution, and Ohio Constitution Article 1 § 5 and Article 1 § 10.

(Doc. 7, Ex. 7 at PageID 105).

On February 2, 2013, the Ohio Court of Appeals issued a judgment entry overruling petitioner's assignment of error. (Doc. 7, Ex. 9). The appeals court found that the trial court properly construed petitioner's motion as a motion for postconviction relief, that the trial court was without jurisdiction to consider the petition because it was untimely, and that the petition was barred from review under the doctrine of *res judicata*. (*See id.*).

Petitioner appealed to the Ohio Supreme Court on March 16, 2015, raising the following proposition of law:

> The trial court erred when it refused to vacate his void sentence, and conduct a *de novo* re-sentencing hearing, pursuant to the Revised Code 2929.14(E)(4), Sixth Amendment to the U.S. Constitution, and Ohio Constitution Article 1 § 5 and Article 1 § 10.

(Doc. 7, Ex. 10 at PageID 122). On June 24, 2015, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (Doc. 7, Ex. 11).

### Federal Habeas Corpus Petition

On February 2, 2016, petitioner filed the instant federal habeas corpus action. (Doc. 1). Petitioner raises the following ground for relief in the petition:

> **GROUND ONE**: The trial court erred when it refused to vacate his void sentence, and conduct a *de novo* re-sentencing hearing, pursuant to the Revised Code 2929.14(E)(4), Sixth Amendment to the U.S. Constitution, and Ohio Constitution Article 1 § 5 and Article 1 § 10.
>
> **Supporting Facts:** The trial court's improper consecutive sentencing, contrary to statute, violated Petitioner's rights under the U.S. Constitution.

(Doc. 1 at PageID 4).

Respondent has filed a return of writ in opposition to the petition, to which petitioner has replied. (Doc. 8, 9). According to respondent, petitioner has procedurally defaulted and waived his ground for relief.

### III. THE PETITION SHOULD BE DENIED.

In petitioner's single ground for relief, he claims that the trial court erred when it failed to conduct a *de novo* re-sentencing hearing. Petitioner raised the same claim in his May 14, 2013 motion to vacate sentence and appeal. Specifically, petitioner argued that at sentencing the Ohio trial court used language "similar to the language defined in Revised Code 2929.14(E)(4) and Courts hold that using language similar to former 2929.14(E)(4) is unconstitutional." (*See* Doc. 7, Ex. 3 at PageID 85; Ex. 7 at PageID 107–108).[2] According to petitioner, because his resulting

---

[2] In his motion, petitioner argued that in sentencing him to consecutive sentences the trial court improperly engaged in fact-finding under former Ohio Rev. Code § 2929.14(E)(4), which was held unconstitutional by the Ohio Supreme Court in *State v. Foster*, 845 N.E. 2d 470 (2006). However, as discussed below (*see infra.*, n.3), *Foster* was abrogated by the Supreme Court in *Oregon v. Ice*, 555 U.S. 160 (2009). The *Ice* Court held that the imposition

sentence was allegedly void, the Ohio courts erred by failing to correct his sentence with a *de novo* resentencing hearing.

As an initial matter, petitioner fails to raise a cognizable ground for federal habeas relief to the extent that he maintains that the Ohio trial court erred under Ohio law in failing to conduct a *de novo* resentencing hearing. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); Pulley v. Harris, 465 U.S. 37, 41 (1984). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

To the extent that petitioner contends that he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding. *See e.g. Jones v. Warden*, No. 1:12-cv-170, 2013 WL 1324406, at *1 (Barrett, J.; Bowman, M.J.) (S.D. Ohio Feb. 2, 2013) (Report and Recommendation) (finding claim that the state trial court failed to conduct a *de novo* resentencing hearing properly informing the petition of post-release control raised issues of state law not cognizable on federal habeas corpus), *adopted* , 2013 WL 1315963 (S.D. Ohio Mar. 28, 2013); *Crosby v. Bradshaw*, No. 1:12-cv-762, at *11 (N.D. Ohio Nov. 30, 2012) (Report and Recommendation) (finding that allegations of a violation of Ohio law in informing the petitioner of post-release control raised issues of state law not cognizable on habeas review), *adopted*, 2013 WL 1773820 (N.D. Ohio Apr. 25, 2013). Petitioner is therefore not entitled to federal habeas relief based on his claim that he should have been provided with a *de novo* re-sentencing under

---

of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment.

Ohio law.

Petitioner similarly raises an issue of state-law only which is not cognizable in this federal habeas proceeding to the extent that petitioner alleges that the trial court erred in interpreting and applying Ohio law in imposing the consecutive sentences in this case. *Cf. Driggins v. Lazaroff*, No. 1:14cv919, 2015 WL 6957219, at *1, *31 (N.D. Ohio Oct. 27, 2015) (citing *Wilson v. Corcoran*, 562 U.S. 1, 8 (2010); *Oregon v. Ice*, 555 U.S. 160, 163 (2009)); *Hoffman v. Tribley*, No. 13-10868, 2013 WL 1137353, at *2 (E.D. Mich. Mar. 19, 2013) (and cases cited therein) ("Regarding consecutive sentencing, the application of state sentencing laws governing consecutive sentencing does not present a federal constitutional question but merely an issue of state law which is not cognizable on habeas review."). *See also Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir. 1998) (holding that although the trial court may have violated a state criminal rule in changing the petitioner's sentence from concurrent to consecutive sentences in his absence, "this error does not . . . constitute a violation of procedural due process of law," but rather is an alleged violation of state law "that is not cognizable in a federal habeas corpus proceeding"); *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

As noted above, in this federal habeas case, the Court has jurisdiction to review petitioner's claim only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States. Petitioner contends that the state court's imposition of consecutive sentences was contrary to statute. However, because habeas review is limited to claims implicating federal concerns, this Court lacks

jurisdiction to consider petitioner's claim to the extent petitioner contends that, as a matter of state law, the imposition of consecutive sentences was improper.

Petitioner has generally argued that the consecutive sentences imposed in his case deprived him of his constitutional rights. (*See* Doc. 1 at PageID 4). However, petitioner's claim is based solely on an alleged violation of Ohio's sentencing statute governing consecutive sentences, which as discussed above, falls outside this Court's authority to consider. *Cf. Bennett v. Turner*, No. 1:12cv489, 2013 WL 557013, at *3 (N.D. Ohio Jan. 23, 2013) (Report & Recommendation) (rejecting the habeas petitioner's attempt to cast his claim of sentencing error under Ohio law "in constitutional terms by stating his 'sentence was not given according to due process and equal protection'"), *adopted*, 2013 WL 518704 (N.D. Ohio Feb. 12, 2013).

In any event, a review of the record does not reflect any error of constitutional dimension. The Supreme Court explicitly held in *Oregon v. Ice*, 555 U.S. 160 (2009), that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment.[3] Indeed, the Supreme Court emphasized in *Ice* that the choice whether to impose sentences consecutively or concurrently is a matter that has historically rested "exclusively" with the sentencing judge and, moreover, that "the prevailing practice" of judges has been the "imposition of consecutive, rather than concurrent, sentences." *Ice*, 555 U.S. at 168-69. Although the *Ice*

---

[3] As background, prior to *Ice*, the Ohio Supreme Court had ruled in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), that portions of Ohio's sentencing statutes, including the provision requiring the trial judge to make certain findings before imposing consecutive sentences, violated the defendant's Sixth Amendment right to a jury trial under the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296 (2004). To remedy the constitutional defects, the *Foster* court severed the unconstitutional provisions and held, among other things, that the trial court had "full discretion" to impose consecutive prison terms without making findings or giving reasons for its decision. *Foster,* 845 N.E.2d at 497-99. Nearly three years later, in *Ice*, the Supreme Court upheld the constitutionality of Oregon's sentencing statute, which like Ohio's pre-*Foster* statute, required the trial judge to make factual findings prior to imposing consecutive sentences. In so ruling, the Court reasoned that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment. *See Ice*, 555 U.S. at 167-69.

Court recognized that legislatures in states like Ohio and Oregon subsequently enacted "statutory protections meant to temper the harshness of the historical practice" favoring consecutive sentences, the Court also made it clear that the state-created protections do not trigger constitutional concerns, but rather fall within the "authority of States over the administration of their criminal justice systems," which "lies at the core of their sovereign status." *Id.* at 169-70. As the *Ice* Court further stated in pertinent part:

> *All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal.* To hem in States by holding that they may not equally choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense. Neither *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] nor our Sixth Amendment traditions compel straitjacketing the States in that manner.

*Id.* at 171 (emphasis added). Therefore, petitioner is not entitled to federal habeas relief to the extent that he challenges his consecutive sentences.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to federal habeas relief based on the claims raised in his single ground for relief. Having found that petitioner is not entitled to habeas relief to the extent that he claims the Ohio courts committed error or otherwise abused its discretion under state law and that his claim challenging the imposition of consecutive sentences is not cognizable in this habeas proceeding, petitioner's single ground for relief the petition should be denied with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[4]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[4] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| BRIAN T. STEPP,<br>    Petitioner, | Case No. 1:16-cv-283 |
| vs. | Barrett, J.<br>Bowman, M.J. |
| WARDEN, WARREN<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | |

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).